IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHARLES ALBERT,
    Plaintiff,
    v.
JOHN YOST, WARDEN, F.C.I.
LORETTO, et al.,
    Defendants

Case No. 3:09-cv-116-KRG-KAP

## Order, and Report and Recommendation

### Recommendation and Order

Plaintiff, an inmate at F.C.I. Loretto, filed a civil complaint alleging inadequate medical care. I recommend that the defendants' motion for summary judgment, docket no. 59, be granted and, if what plaintiff filed can be considered a motion for summary judgment, docket no. 74, that it be denied. The plaintiff's document styled "Motion for Clarification and for Other Relief", docket no. 82, is denied.

### Report

Plaintiff is at F.C.I. Loretto serving a 97 month sentence imposed in April 2006 by the United States District Court for the Northern District of Ohio. Plaintiff filed a short complaint naming the former warden at Loretto and several other employees of the Bureau of Prisons defendants in late April 2009, docket no. 1, docket no. 3, alleging that on May 26, 2006 (the date of plaintiff's arrival at Loretto), Physician Assistant Robin Golden "changed his medication" and that Doctor James Leonard and several other defendants denied him his "right to see a specialist." Plaintiff demanded money damages, medical treatment

from a specialist "in my chronic field" and all the medications that this specialist would prescribe.

In June 2009, plaintiff filed an amended complaint, docket no. 7, this time naming ten persons or entities as defendants, and explaining in a little more detail that he was 54 years old, suffered from chronic degenerative disc and joint disease, and underwent surgery (not described further in the complaint but referred to in the exhibits as surgery on a herniated lumbar disc (L4-5) with screw and rod placement) one month before commitment to Loretto, and had been prescribed pain medications (not described further but referred to in the exhibits as narcotics) by the operating surgeons. Plaintiff alleged that when he arrived at Loretto, Jeffrey Trimbath, the medical staff administrator, discontinued the former prescriptions and placed plaintiff on Peroxicam (defendants spell it Piroxicam and describe it as a non-steroidal anti-inflammatory pain reliever), and naproxen with sodium. Plaintiff also alleged that P.A. Golden prescribed naproxen with sodium in December 2007. The only other pain medications authorized by the medical staff were acetaminophen and capsaicin creme.

Plaintiff alleged that at the time the naproxen sodium was prescribed he was unaware of the potential risks posed by the drug to persons with medical conditions such as "heart problems, heart attack history, swelling of the hands, and a history of

allergic reactions to certain medications, including Aspirin." Plaintiff alleged he discovered he is allergic to naproxen with sodium because after taking the medication he suffered from "lightheadedness, bleeding from the to[ngue], shortness of breath, numbness and pain in the left arm, and severe chest pains," also described as "to[ngue] bleeding", "blisters in roof of mouth", "left arm numbness"; as well as "shortness of breath" and "severe, crushing chest pains" which allegedly continued unabated to the date of the complaint. P.A. Golden would not change the "medications that have caused the adverse reactions listed herein." Despite these severe and unabated conditions plaintiff alleged that after being told by Trimbath to "stop whining" on May 3, 2008, he did not seek any further medical attention at F.C.I. Loretto. This is not true. According to the medical records submitted by defendants which plaintiff does not dispute, plaintiff did and does continue to receive extensive medical care for his various illnesses and conditions. The medical staff continues to refuse plaintiff narcotics. docket no. 36-6, Document 2, Declaration of Jeffrey G. Trimbath, summarizing plaintiff's course of care.

Plaintiff's complaint was referred to Magistrate Judge Hay, who throughout the rest of 2009 denied (and was affirmed on appeal) plaintiff's attempt to file another amendment to the complaint, as well as improper attempts to obtain default judgments. Upon service of the complaint on some of the defendants

named in the amended complaint, the United States Attorney entered an appearance for all of the defendants, served or not, and moved for summary judgment. docket no. 35, docket no. 59. The reason there is a second motion apparently is because in early 2010 plaintiff identified some defendants that hitherto had been described only by their title as members of the "URC Committee" and despite plaintiff's failure to provide directions for service the United States Attorney wished to make clear that these defendants were intended to be covered by the motion for summary judgment.

In October 2010, after the defendants' motion for summary judgment was briefed by both sides, Judge Hay passed away. Plaintiff filed his own motion for summary judgment that month, docket no. 74. When this matter was referred to me I observed that the complaints of injury by plaintiff were more than usually nebulous and appeared to be backed by nothing more than plaintiff's ipse dixit that defendants were liable because they were not prescribing him stronger pain medication. I ordered the parties to point out where in the record there was competent expert evidence that any action or inaction by any defendant caused any harm to plaintiff. docket no. 79. See Fed.R.Civ.P. 56(f)(2)(upon notice and reasonable time to respond the court may grant summary judgment on grounds not raised by a party). Defendants responded that there was no such evidence. docket no. 80. Plaintiff filed a response, docket no. 81, agreeing that there was no expert

evidence, asserting in the alternative that no expert evidence was necessary, but that if the court ruled otherwise plaintiff would then retain an expert who would "provide testimony establishing a breach of the Defendants of the requisite standard of care." Plaintiff's response can hardly be called a request for additional time under Fed.R.Civ.P. 56(d) because it makes no attempt to show "specified reasons" why expert affidavits or declarations could not have been or cannot be obtained.

Let me start by explaining what it is that courts do, then explain what the substantive law is that applies to plaintiff's case, and conclude by showing why judgment must be entered for defendants.

I

First, a court is a place where judgments are made about the application of the law to a set of facts. Normally, the law is assumed to be known and stable. It is the job of the litigants to present the relevant facts to the court (usually jointly), and then it is the job of the court to explain the application of the law to the litigants. Particularly with inmate medical care litigation, there is often misperception about each of these three things. Even a plaintiff who appreciates that law is not whatever it is that he wants, and who does an adequate job of understanding facts, often stumbles on the third element. Courts are not medical care ombudsmen, and judges are not patient care advocates. That

judges and juries must in the course of litigation make judgments about the adequacy of medical care, and that the outcome of litigation leads not only to specific health care outcomes but also exerts a more general regulatory effect on the health care system should not obscure the point that litigation is about the liability (or not) of defendants for demonstrable harms proved to result from concrete courses of action. It is not a supplementary way of providing services to the plaintiff. It is never sufficient for a plaintiff to throw up a general claim of medical need, name as defendants persons who are connected with the provision of medical care in prison, and expect the court to guess at the connection. Plaintiff has done little more than that.

## II

For Eighth Amendment claims based on improper medical care in prison[1], the relevant law is stated in Estelle v. Gamble, 429 U.S. 97, 106 (1976): prison inmates have a right, derived from the Eighth Amendment, that prison officials not be deliberately indifferent to providing care for their serious medical needs. The "deliberate indifference" element of an Estelle v. Gamble claim to require willful disregard:

> [A] prison official cannot be found liable under the
> Eighth Amendment for denying an inmate humane conditions of

---

1. Despite scattered references throughout the briefs to the FTCA, the amended complaint presents only a Bivens-type claim based on the Eighth Amendment, and plaintiff has never satisfied the jurisdictional prerequisites to filing a complaint under the FTCA.

confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994). Since a defendant's state of mind, like other facts, can be proved by circumstantial evidence, the Farmer standard does not require a defendant to admit to intent to harm a plaintiff or to consciousness of a risk of serious harm before liability can be imposed. Nevertheless, the state of mind required for liability is subjective knowledge, not the negligence standard of objectively unreasonable ignorance. 511 U.S. at 843, n.8.

As an obvious consequence of the foregoing, proof of a defendant's liability will vary with depending on the defendant's varying role. While medical personnel are expected to evaluate the medical needs of inmates, the same is not true of corrections officers or administrators. In the absence of truly unusual circumstances (not alleged here), a prison administrator who delegates medical care decisions to medical personnel within a normally functioning system does not have the requisite subjective state of mind for liability. Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir.2004). Plaintiff alleges that the URC Committee, the warden, and Bureau of Prison officials not at Loretto were aware of the medical care decisions at F.C.I. Loretto and of his medical needs. This is inadequate even at the motion to dismiss stage.

At the summary judgment stage, Fed.R.Civ.P. 56(a) directs the entry of summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." An issue of fact is genuinely disputed if the evidence is such that under the applicable substantive law a reasonable jury might return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986). One question a jury would have to answer, examining the record in the light most favorable to plaintiff, is whether plaintiff suffered any harm **as a result of** any defendant's conduct. Plaintiff must provide medical expert evidence to prove this, just as with any other medical issue unless the "matter ... is so simple ... as to be within the range of ordinary experience and comprehension of even nonprofessional persons." <u>See</u> <u>Brannan v. Lankanau Hospital</u>, 417 A. 2d 196, 201 (Pa.1980), <u>quoting</u> <u>Chandler v. Cook</u>, 265 A.2d 794, 796 (Pa.1970). <u>See</u> <u>also</u> <u>Festa v. Greenberg</u>, 511 A.2d 1371, 1376 (Pa.Super.1986) <u>alloc.</u> <u>denied</u>, 527 A.2d 541 (Pa.1987) (expert testimony needed in informed consent cases to establish the existence of medical risks about which the average juror has no knowledge); <u>Boring v. Kozakiewicz</u>, 833 F.2d 468, 473 (3d Cir.1987)(expert testimony required to prove that a medical need was serious), <u>cert.</u> <u>denied</u>, 485 U.S. 991 (1988); <u>compare</u> <u>Bushman v. Halm</u>, 798 F.2d 651, 658-59 (3d Cir.1986)(expert testimony not necessary in a motor vehicle collision to prove causation of

trauma); see also Geibel v. United States, 667 F. Supp. 215, 219 (W.D.Pa.1987)(discussing lack of expert evidence submitted to prove claim that dosage decision by physician caused plaintiff harm), aff'd, 845 F.2d 1011 (3d Cir.1988).

The seminal Eighth Amendment case, Estelle v. Gamble, gives examples of actual cases where expert testimony would not be needed to show that an inmate suffered harm: it does not take an expert to conclude that a prison doctor who chooses the "easier and less efficacious treatment" of throwing away the prisoner's ear and stitching the stump rather than treating the prisoner after an altercation has caused him harm. Similarly, if plaintiff were struck by a defendant and immediately suffered pain that was later determined to be a broken bone, plaintiff would not need an expert to opine that the blow caused the break. Bushman v. Halm, supra.

### III

But assuming the existence of the unabated crushing chest pain and shortness of breath plaintiff says in his pleadings he has suffered from, for the last two and a half years, without medical attention, the causation of that injury is not obvious at all. Plaintiff now says that the cause was the naproxen sodium P.A. Golden prescribed. In his administrative remedy filings plaintiff says that after one of his surgeries in April 2006 his family doctor prescribed naproxen too, and that the problem was that a P.A. (Golden ?) stopped the naproxen and prescribed acetaminophen.

9

docket no. 64-3 at 8 (BP-9 dated December 4, 2006). Then plaintiff complained that another P.A. "took me off of Peroxycan [sic, should be Piroxicam] due to Gastritis but I have taken Naproxen and Naperson [sic, should it be naprosyn?] in the past without the side effect of Gastritis. This can be verified with my family doctor." Then, plaintiff observes, he was placed back on naproxen sodium in November 2006, but needs something stronger. docket no. 64-3 at 9.

For the first year and a half of his litigation plaintiff concentrated on his desire to have the court refer him to "a specialist" and to obtain narcotics. Plaintiff never really focused on what harm defendants had allegedly done to him until his motion for summary judgment, docket no. 74, in which he opines that the prescription of naproxen with sodium has caused him an allergic reaction. Plaintiff's current theory of liability (for which he asks for $100 million in damages!) does not even present a good example of the post hoc ergo propter hoc fallacy, since plaintiff himself asserts he took naproxen in the past without incident, and was taking numerous other medications before and after the naproxen sodium. Plaintiff now asserts that he suffers from serious injury and that the cause was the naproxen sodium, most probably because he read the package insert. Even leaving the hearsay objection to the package insert aside, a jury believing plaintiff's allegations of crushing chest pain and shortness of breath would not be allowed

to speculate unguided about whether the cause, assuming it could be traced to a drug, was the naproxen sodium prescribed by P.A. Golden, or acetaminophen or capsaicin, or perhaps phenobarbital or phenytoin (prescribed to plaintiff for seizures), metformin (for diabetes), or ranitidine (for gastric reflux), or perhaps some combination of drugs with plaintiff's pre-existing medical conditions, his former alcohol use, the trauma caused by a former motor vehicle accident or an incident in which plaintiff reported being struck with a sledge hammer, or by his obesity, epilepsy, diabetes, and degenerative disc disease.

Plaintiff, I have little doubt, will read this and sincerely default back to his earlier position of asserting "see, this is why I need an order directing them to send me to a specialist." But in court, plaintiff must first prove that defendants have done something to cause him injury, and then prove what the appropriate relief is. It is the worst circular reasoning to assert, as plaintiff does, that the harm plaintiff is suffering is the lack of care by a specialist, for which the remedy is an order directing care by a specialist. Plaintiff is not competent to prove that the prescription of naproxen sodium caused him harm, and he offers no competent testimony that it did. And although pleading multiple theories of liability is permissible, what plaintiff has obviously done is simply throw his dissatisfaction with medical care decisions into court in the hope that it will be

cheaper to change his treatment than litigate his changing theories of liability.

Because plaintiff has not proved the existence of any genuine dispute of **material** fact, judgment must be entered for defendants. There are numerous other procedural and substantive hurdles to plaintiff's claims (failure to exhaust administrative remedies, failure to provide adequate directions for personal service, expiration of the statute of limitations, lack of personal involvement in plaintiff's treatment decisions) which defendants address and which also may cause plaintiff to stumble, but I decline to address them because they are superfluous. There is little point to discussing the absence of evidence of a defendant's hypothetical deliberate indifference to the prospect of harm when plaintiff cannot prove that any harm exists.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have fourteen days to serve and file written objections to this Report and Recommendation.

DATE: 14 Jan. 2011

Keith A. Pesto,
United States Magistrate Judge

Notice to counsel of record by ECF and by U.S. Mail to:

    Charles Albert, Reg. No. 30123-160
    F.C.I. Loretto
    P.O. Box 1000
    Loretto, PA 15940